UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAN CARLO G.M.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX, et al.,<br><br>Respondents. | No. 1:26-cv-00866-TLN-JDP<br><br>A# 213-246-427<br><br>**ORDER** |

This matter is before the Court on Petitioner Jan Carlo G.M.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response. (ECF Nos. 9, 13.) Petitioner filed a reply. (ECF No. 14.) For the reasons set forth below, the Petition is DENIED.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner entered the United States on or about May 14, 2022. (ECF No. 9-1 at 5.) On February 20, 2024, the United States District Court for the Western District of Texas convicted Petitioner of conspiracy to transport aliens for financial gain pursuant to 8 U.S.C. § 1324(a)(1). (*Id.*) Two days later, the U.S. Department of Homeland Security ("DHS") served Petitioner with a final administrative removal order and a Notice of Intent to Issue a Final Administrative Removal Order, which charged him as deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. (*Id.* at 4–5.) Petitioner admitted the allegations and the charge, and he requested removal to Mexico. (*Id.* at 6.) DHS removed Petitioner to Mexico. (ECF No. 9-2 at 2.)

On June 5, 2025, police officers arrested Petitioner during a traffic stop and transferred him to the custody of U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*) The next day, ICE served Petitioner with a Notice of Intent to Reinstate his prior removal order. (ECF No. 9-1 at 2.) Petitioner was charged thereafter in the United States District Court for the District of Arizona with illegal entry. (ECF No. 14 at 2.) He entered a plea and served five months. (*Id.*; ECF No. 1 at 5.) Petitioner was placed in immigration custody and transferred to Golden State Annex after he completed his sentence.[2] (ECF No. 1 at 5.) On November 24, 2025, DHS reinstated Petitioner's prior removal order. (ECF No. 9-1 at 1–2.)

After his immigration detention began, Petitioner expressed a fear of returning to Mexico. (ECF No. 9-3 at 1–2.) An asylum officer made a negative reasonable fear finding. (*Id.*) On January 26, 2026, an immigration judge affirmed the asylum officer's finding, returned the case to DHS for Petitioner's removal, and noted that no administrative appeal was available under 8 C.F.R. § 1208.31(g)(1). (*Id.*)

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus on February 2, 2026, alleging his detention without a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1.)

---

[2] The record does not clearly establish when, between June 5 and November 24, 2025, Petitioner entered criminal custody or returned to immigration custody. The Court has reconstructed the relevant chronology to the extent possible from the briefing provided. As discussed below, the sequence of custody during this period does not bear on the Court's findings.

Shortly thereafter, the Court granted Petitioner's Motion to Appoint Counsel. (ECF No. 6.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner contends his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16.) In opposition, Respondent contends that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) based on his final order of removal and his conviction for conspiracy to transport aliens for financial gain. (ECF No. 13 at 1.) The Court first addresses the statutory basis for Petitioner's detention and then turns to his due process claim.

### A. Detention Authority

8 U.S.C. § 1231(a) governs detention of noncitizens with final orders of removal. Under § 1231(a), once a removal order is final, the government must "remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Beyond the 90-day removal period, 8 U.S.C. § 1231(a)(6) authorizes the continued detention of, among others, a noncitizen who is removable under 8 U.S.C. § 1227(a)(2). *Id.* § 1231(a)(6).

Here, Petitioner is subject to a reinstated final order of removal, and he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his aggravated felony conviction for conspiracy to transport aliens for financial gain pursuant to 8 U.S.C. § 1324(a)(1). (ECF No. 9-1 at 2, 4–5); *see*

8 U.S.C. § 1101(a)(43)(N), (U) (defining an aggravated felony to include an alien-smuggling offense under § 1324(a) and a conspiracy to commit that offense). Thus, Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6).

B. Fifth Amendment Due Process Clause

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Petitioner has a protected liberty interest in freedom from imprisonment. *See id.* Petitioner's circumstances, however, diminish that interest. Petitioner enjoyed no sustained period of freedom during which his community ties could strengthen his liberty interest. Instead, he was removed to Mexico, reentered unlawfully, served a criminal sentence for illegal entry, and

passed directly from criminal custody into immigration detention. (ECF No. 1 at 5; ECF No. 9-2 at 2; ECF No. 14 at 2.) He also remains subject to a final, reinstated order of removal premised on an aggravated-felony conviction. (ECF No. 9-1 at 2, 4–5.)

Petitioner therefore retains a protected, but diminished, liberty interest, and the Court proceeds to the second step of the inquiry.

*ii. Process Required*

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors establish that Petitioner received the process he was due.

First, as explained above, although Petitioner has a private interest affected by detention, it is not substantial. Petitioner's circumstances diminish that interest: he is subject to a final, reinstated order of removal and an aggravated-felony conviction, and he passed directly from criminal custody into immigration detention without any period of freedom during which his community ties could strengthen his liberty interest. Thus, the first factor weighs only slightly in favor of Petitioner.

Second, the risk of an erroneous deprivation of Petitioner's liberty interest is low, and additional safeguards would supply little value. Under § 1231(a)(2)(A), the government may detain a noncitizen for the purpose of executing an order of removal. Here, Petitioner was detained upon the reinstatement of his order of removal, which the government asserts it can and will execute.[3] Moreover, Petitioner received some procedural safeguards that confirm his detention bears a reasonable relationship to the government's duty to execute removal orders.

---

[3] Respondents note Petitioner's removal is significantly likely once this Court's Order not to transfer Petitioner pending a ruling on the habeas petition is lifted. (ECF No. 13 at 3.)

Petitioner claimed a fear of returning to Mexico; an asylum officer conducted a reasonable fear interview and reached a negative finding; and an immigration judge reviewed and affirmed that finding. (ECF No. 9-3 at 1–2.) Those procedures tested and rejected the sole ground on which Petitioner could have avoided removal. A bond hearing or comparable safeguard would supply little additional value, because Petitioner's detention rests on a final and executable order of removal from which Petitioner has no available relief. Thus, the second factor weighs against Petitioner.

Third, the government's interest in Petitioner's continued detention is high. Respondents hold a substantial interest in detaining a noncitizen who is subject to a final, reinstated order of removal and who has been convicted of an aggravated felony, and in securing his availability for an imminent removal. Thus, the third factor weighs against Petitioner.

Upon consideration of the *Mathews* factors, the Court finds that Petitioner received the process he was due. Petitioner's diminished private interest, the low risk of an erroneous deprivation in light of the process afforded, and the government's strong interest in effecting an imminent removal each support that conclusion. Petitioner's detention therefore does not currently violate the Fifth Amendment Due Process Clause.

However, if Respondents do not act swiftly to effect Petitioner's removal, Petitioner may file a subsequent petition for writ of habeas corpus. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED without prejudice to refiling; and
2. The Clerk of the Court shall enter judgment and close this case.

//

//

//

IT IS SO ORDERED.

Date: August 17, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE